

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

December 27, 1967

Honorable Burton G. Hackney          Opinion No. M-173
Commissioner, State Dept. of
   Public Welfare                Re: Medical assistance payments
John H. Reagan Building                   for public assistance recip-
Austin, Texas                             ients by State Department
                                          of Public Welfare.

Dear Mr. Hackney:

     You have asked the following questions on the authority
of the State Department of Public Welfare to make certain medical
assistance payments for public assistance recipients:

     "1. On the assumption that there is no
Federal barrier, either in the Law or Federal
rules and regulations, in your opinion does
Article III, Section 51-a of the Texas Con-
stitution require the Department to make
payments for Medical Assistance on behalf
of such recipients (OAA, AB, APTD, and AFDC)
under Title XIX in the form of vendor payments
payable to the providers of services, such as
physicians?

     "If you answer question No. 1 in the
affirmative, then this will obviate the neces-
sity for answering questions No. 2 and 3; how-
ever, if it is answered in the negative, please
answer the following:

     "2. If payment can be made under Article
III, Section 51-a of the Texas Constitution,
then in your opinion, could the Department
make payments under Senate Bills Nos. 2 and
454 to the recipients for medical services
received under Title XIX instead of making
vendor payments to the providers of services?

"3. Assuming that the Federal Law is amended as proposed by Section 230 of H. R. 12080, can the State of Texas make Medical Assistance payments directly to the medically needy individuals (non-recipients) for services which they have received from the physician, or will the Constitution, as it is now written, require the Department to make vendor payments on behalf of the medi- cally needy as well as on behalf of the recip- ients of Public Assistance?"

Section 51-a, Article III, Constitution of Texas, pro- vides:

"The Legislature shall have the power, by General Laws, to provide, subject to limitations herein contained, and such other limitations, restrictions and regulations as may by the Legislature be deemed expedient, for assistance to and/or medical care for, and for rehabilitation and <u>any other services included in the Federal legislation providing matching funds to help such families and in- dividuals attain or retain capability for in- dependence or self-care</u>, and for the payment of assistance to and/or medical care for, and for rehabilitation and other services for:

"(1) Needy aged persons who are citizens of the United States or noncitizens who shall have resided within the boundaries of the United States for at least twenty-five (25) years and are over the age of sixty-five (65) years;

"(2) Needy individuals who are citizens of the United States who shall have passed their eighteenth (18th) birthday but have not passed their sixty-fifth (65th) birthday and who are totally and permanently disabled by reason of

a mental or physical handicap or a combination
of physical and mental handicaps;

"(3) Needy blind persons who are citizens
of the United States, and who are over the age
of eighteen (18) years;

"(4) Needy children who are citizens of the
United States and who are under the age of
twenty-one (21) years, and to the caretakers of
such children.

"The Legislature may define the residence
requirements, if any, for participation in these
programs.

"The Legislature shall have authority to
enact appropriate legislation which will enable
the State of Texas to cooperate with the Govern-
ment of the United States in providing assistance
to and/or medical care on behalf of needy persons,
and in providing rehabilitation and any other
services included in the Federal legislation pro-
viding matching funds to help such families
and individuals attain or retain capability
for independence or self-care, and to accept
and expend funds from the Government of the
United States for such purposes in accordance
with the laws of the United States as they now
are or as they may hereafter be amended, and
to make appropriations out of State funds for
such purposes; provided that the maximum amount
paid out of State funds to or on behalf of any
individual recipient shall not exceed the amount
that is matchable out of Federal funds; pro-
vided that the total amount of such assistance
payments and/or medical assistance payments out
of State funds on behalf of such recipients
shall not exceed the amount that is matchable
out of Federal funds; provided that if the
limitations and restrictions herein contained

are found to be in conflict with the provisions of appropriate Federal statutes as they now are or as they may be amended, to the extent that Federal matching money is not available to the State for these purposes, then and in that event the Legislature is specifically authorized and empowered to prescribe such limitations and restrictions and enact such laws as may be necessary in order that such Federal matching money will be available for assistance and/or medical care for or on behalf of needy persons; and provided further that the total amount of money to be expended per fiscal year out of State funds for assistance payments only to recipients of Old Age Assistance, Aid to the Permanently and Totally Disabled, Aid to the Blind, and Aid to Families with Dependent Children shall never exceed Sixty Million Dollars ($60,000,000).

"Nothing in this Section shall be construed to amend, modify or repeal Section 31 of Article XVI of this Constitution; provided further, however, that such medical care, services or assistance shall also include the employment of objective or subjective means, without the use of drugs, for the purpose of ascertaining and measuring the powers of vision of the human eye, and fitting lenses or prisms to correct or remedy any defect or abnormal condition of vision. Nothing herein shall be construed to permit optometrists to treat the eyes for any defect whatsoever in any manner nor to administer nor to prescribe any drug or physical treatment whatsoever, unless such optometrist is a regularly licensed physician or surgeon under the Laws of this State." (Emphasis added.)

The Federal Law as codified in 42 U.S.C.A., Section 1396b, provides:

"For purposes of this subchapter --

"(a) The term 'medical assistance' means payment of part or all of the cost of the following care and services (if provided in or after the third month before the month in which the recipient makes application for assistance) for individuals who are --

"(i) under the age of 21,

"(ii) relatives specified in section 606(b) (1) of this title with whom a child is living if such child, except for section 606(a) (2) of this title, is (or would, if needy, be) a dependent child under subchapter IV of this chapter,

"(iii) 65 years of age or older,

"(iv) blind, or

"(v) 18 years of age or older and permanently and totally disabled, <u>but whose income and resources are insufficient to meet all of such cost</u> --

"(1) . . .

"(5) <u>physicians' services, whether furnished in the office, the patient's home</u>, a hospital, or a skilled nursing home, <u>or elsewhere</u>;

". . ." (Emphasis added.)

It is noted that the constitutional provision refers to Section 31, Article XVI, Constitution of Texas, stating that nothing shall be construed to amend, modify or repeal such Article. Physicians' services pursuant to the constitutional provision above are found in the Texas Medical Practice Act codified as Article 4510, V.C.S.

"Art. 4510. Who regarded as practicing medicine

-833-

"Any person shall be regarded as practicing
medicine within the meaning of this law:

"(1) Who shall publicly profess to be a
physician or surgeon and shall diagnose, treat,
or offer to treat, any disease or disorder,
mental or physical, or any physical deformity
or injury . . . and charge therefor . . .
money . . . ."  (Emphasis added.)

Under such practice, money charges are ordinarily made directly to
the patient.

It should be noted that there are three critical dates
specified in the federal law, for the State to operate and enlarge
the scope of the programs, which may be used as an indication of
the intent of the federal legislation. The last dated require-
ment of the States provided in the federal law is July 1, 1975.
The requirements of the federal law are set out in U.S.C.A. 42,
Section 1396b (e), which provides:

"The Secretary shall not make payments under
the preceding provisions of this section to any
State unless the State makes a satisfactory showing
that it is making efforts in the direction of
broadening the scope of the care and services made
available under the plan and in the direction of
liberalizing the eligibility requirements for
medical assistance, with a view toward furnishing
by July 1, 1975, comprehensive care and services
to substantially all individuals who meet the
plan's eligibility standards with respect to in-
come and resources, including services to enable
such individuals to attain or retain independence
or self-care."  (Emphasis added.)

The similarity and common use of language in the federal
act and the state constitutional provision, and our legal concept
of physicians' services lead us to the conclusion that the programs

were intended to be carried out within the full scope of the federal law, especially in regard to the retention or attainment of individual independence and self-care. It is noted that the federal law qualifies the individual whose income and resources are "insufficient," rather than "none" or "non-existant".

In view of the underlined portion of Section 51-a of Article III of the Constitution of Texas, the Legislature is specifically authorized to enact such legislation as will enable the State of Texas to receive federal matching funds for medical assistance to needy individuals. It is noted that the purpose is to help such families attain or retain capability for independence or self-care. The Constitution does not prescribe to whom payments of these funds are to be made. Therefore if federal legislation, as it may exist or as it may hereafter be amended, permits payments of such funds to be made directly to the needy individuals, Article III, Section 51-a of the Constitution of Texas specifically authorizes such payment. In answer to your first question, therefore, you are advised that Article III, Section 51-a of the Texas Constitution does not require the State Department of Public Welfare to make "vendor" payments payable to providers of services such as physicians, but payments may be made directly to the needy recipient if permitted by federal legislation.

Section 2 of Senate Bill 2, Acts 60th Legislature, Regular Session, Chapter 151, page 310, codified in Vernon's as Article 695j-1 provides in part:

"It is the intent of the Legislature to make statutory provision which will enable the State of Texas to provide Medical Assistance on behalf of needy individuals of this state and to enable the state to obtain all benefits provided by the Federal Social Security Act as it now reads or as it may hereafter be amended, or by any other Federal Act now in effect or which may hereafter be enacted within the limits of funds available for such purposes. Wherever used in this Act the term 'Medical Assistance' shall include all of the health care, services,

assistance and benefits authorized or provided
for in such Federal legislation."  (Emphasis
added.)

    Section 6 of Senate Bill 2, providing for payments,
is directory in nature and provides, in part:

    "The State Department is hereby author-
ized to determine the method of payment of
claims . . . by establishing a direct vendor
payment program . . . or by an insurance plan
or hospital service plan . . . or by any other
. . . method of payment . . . which the State
Department finds to be the most satisfactory
and economical method of paying costs and/or
processing claims . . . .

    "If the State Department elects as part of
its plan and/or methods to make payments directly
to vendors of Medical Assistance as authorized
in this Act, then such vendor payments provided
for under the terms of this Act shall be paid
by vouchers or warrants drawn by the State Comp-
troller on the proper accounts of a 'State Depart-
ment of Public Welfare Fund'; for the purpose of
permitting the State Comptroller to properly draw
and issue such vouchers or warrants, the State
Department of Public Welfare shall furnish the
Comptroller with a list of or roll of those entitled
to such vendor payments from time to time, together
with the amount to which each vendor is entitled.
When such vouchers or warrants have been drawn
they shall be delivered to the Commissioner of
the State Department of Public Welfare, who in
turn shall supervise the delivery of same to
the vendors entitled thereto."  (Emphasis added.)

    Section 7 provides as follows:

    "Neither Medical Assistance nor amounts
payable to vendors out of public assistance

> funds are transferable or assignable, at law
> or in equity, and none of the money paid or
> payable under the provisions of this Act shall
> be subject to execution, levy, attachment,
> garnishment, or other legal process, or to
> the operation of any insolvency law."
> (Emphasis added.)

Section 19 of Senate Bill 2 provides:

> "It is not the intention of this Act to
> preempt or dilute or in any way infringe upon
> the health programs for which any State Agency
> or Department is or may be responsible, and it
> is the intention of this Act that the state
> plan for Medical Assistance provide for enter-
> ing into cooperative arrangements with other
> State Agencies and Departments responsible
> for administering or supervising the administra-
> tion of health services in the state looking
> toward maximum utilization of such services in
> the provision of Medical Assistance under this
> plan."

Such a statute should be given a liberal construction to carry out the legislative purpose and intent to make medical assistance payments in accordance with the best method as found by the State Department to implement the program. That Department is expressly given the power of election whether to make payments directly to vendors.

There has been some question raised concerning the provisions of Senate Bill 454, Acts of the 60th Legislature, Regular Session, 1967. We dispose of that question by stating that Senate Bill 454 is an amendment to the existing law to conform to the program of federal legislation pursuant to Article III, Section 51-a of the Texas Constitution.

It is again noted that under the provisions of Senate Bill 2, the State Department of Public Welfare is not limited to making "vendor payments" but is given authority to "elect" as a

part of its plan to make payments directly to vendors for medical assistance. The Act refers to medical assistance payments and also amounts payable to vendors out of public assistance funds. Therefore, you are advised in answer to your questions numbers 2 and 3 that the State Department of Public Welfare may make payments directly to recipients for medical service received under Title 19, as well as making payments directly to vendors of medical assistance, and may continue to make such payments in the event that Section 230 of H. R. 12080 is enacted into law by the Federal Congress.

## S U M M A R Y

Section 51-a of Article III, Constitution of Texas and Senate Bill 2, Acts of the 60th Legislature, Regular Session, 1967, Chapter 151, page 310, enacted pursuant to the provisions of Section 51-a of Article III authorizes the State Department of Public Welfare to make medical assistance payments in any manner most satisfactory and economical, including payments directly to recipients for medical services received in accordance with the laws of the United States as they now exist, or as they may hereafter be amended, as well as to make medical assistance payments directly to vendors of medical assistance.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Pat Cain and John Reeves
Assistant Attorneys' General

APPROVED:
OPINION COMMITTEE

Hon. Burton G. Hackney, page 11 (M-173)


Hawthorne Phillips, Chairman
Kerns Taylor, Co-Chairman
W. V. Geppert
Pat Bailey
Jack Sparks
Houghton Brownlee
Sam Kelly

A. J. CARUBBI, JR.
Staff Legal Assistant